McNULTY, Acting Chief Judge.
Only one point merits discussion in the state’s consolidated interlocutory appeals herein, and that relating to an order suppressing certain evidence. We think the point is well taken and reverse the order to suppress.
Appellee Traas was employed as a nurse in Operation P.A.R., a facility receiving federal-grant funds for the treatment of patients with heroin addiction. John Raleigh, a confidential informant, was a bona fide patient at Operation P.A.R. receiving methadone for his heroin habit. He testified that he was commissioned as an undercover informant for work “on the street” and at the time of such commission neither he nor the police who hired him knew of any illegal involvement with narcotics by anyone employed in P.A.R.
Eventually, Raleigh suspected that Traas was involved illegally in narcotics and reported his suspicions and observations to the police. A buy was ultimately set up and consummated on August 6, 1975, at Traas’ home, giving rise to the single transaction charges of sale and possession in the instant case.
Traas’ principal contention in the motion to suppress filed below, apparently agreed to by the trial judge, was that since Operation P.A.R. was a federally funded narcotics treatment center, and because the regulations of the United States Department of Health, Education and Welfare, pursuant to the Drug Abuse Office and Treatment Act of 1972[1] prohibit enrollment of an undercover agent or informant in any drug abuse treatment “program” without court order (the fact here),[2] the information obtained *1296 through the informant Raleigh was illegally obtained. Thus, she argues, under the “poison fruit” doctrine[3] the evidence obtained herein during the ensuing alleged sale charged was tainted. We can’t agree.
In the first place, the.“poison fruit” doctrine presupposes wrongful acts of the police. Here, Raleigh was a paid “street informant”, not hired to spy or inform regarding illegal narcotic activity within P.A.R. Neither he nor the police who recruited-him were aware of any such illegal activity. When he found out about the possibility of such activity he then, informed his employers. Such information was neither solicited nor anticipated. To that point, therefore, the police had done no wrong. If they did any wrong thereafter, assuming the validity of the argument that Federal Regulations precluded as, unlawful an undercover agent within the “program”, it was in not “de-commissioning” Raleigh. In any event, that “wrong” was after they received the information upon which they acted; and, the record reflects that no other evidence was obtained through-. Raleigh’s surveillance prior to the alleged sale, which we discuss below. In short, we know of no rule which would apply retrospectively the “poison fruit” doctrine so as to “taint” prior legally and innocently discovered evidence.
But even if we assume “poisoned” information, the doctrine admits a purging thereof by sufficiently independent circumstances.[4] Here, the alleged subsequent, independent illegal sale, at this point presumably voluntarily entered into by appellee Traas (from which sale the possession charge herein also arose), sufficiently in our view stands on its own feet and supports the admissibility of the evidence suppressed. Stated concisely otherwise, any preexisting taint was purged by the sale.[5]
In view whereof, the order appealed from should be and it is hereby vacated and set aside and the cause is remanded for further proceedings not inconsistent herewith.
GRIMES, J., and GREEN, OLIVER L., Jr., Associate Judge, concur.

. 21 U.S.C. § 1175.

. 40 Fed.Reg. 27809 (1975). The obvious laudable purpose of the rule is to encourage partici *1296 pation in the program by heroin addicts and to allay fears of police “spying” or intimidation.

. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

. Wong Sun, supra.

. State v. Smail, 337 So.2d 421 (Fla.2d DCA 1976).